**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DESIREE MARTINEZ,

*Plaintiff-Appellant*,

v.

CHANNON HIGH,

*Defendant-Appellee*.

No. 22-16335

D.C. No.
1:15-cv-00683-
DAD-SKO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted August 22, 2023
San Francisco, California

Filed January 26, 2024

Before: Patrick J. Bumatay, Lucy H. Koh, and Roopali H.
Desai, Circuit Judges.

Opinion by Judge Desai;
Concurrence in Judgment by Judge Bumatay

# SUMMARY*

## Qualified Immunity/State-Created Danger Doctrine

The panel affirmed the district court's summary judgment order granting qualified immunity to Channon High, a City of Clovis police officer, in an action brought pursuant to 42 U.S.C. § 1983 by Desiree Martinez, alleging that Officer High violated her due process rights under the state-created danger doctrine when she disclosed Martinez's confidential domestic violence report to Martinez's abuser Kyle Pennington, another Clovis police officer.

The panel first determined that the district court did not abuse its discretion by entertaining Officer High's successive summary judgment motion on remand from this court's decision in Martinez's prior interlocutory appeal.

Addressing the merits, the panel held that Officer High violated Martinez's due process rights. Although state actors generally are not liable for failing to prevent the acts of private parties, an exception to this rule—the "state-created danger" exception—applies where the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger. Here, Officer High's affirmative conduct of disclosing Martinez's confidential complaint to Pennington, whom Officer High knew was an alleged abuser, placed Martinez in actual, foreseeable danger. Officer High also acted with deliberate indifference toward the risk of future abuse, given that she

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

knew Pennington was violent and under investigation for domestic violence.

The panel nevertheless held that Officer High was entitled to qualified immunity because it was not clearly established in 2013 that Officer High's conduct violated Martinez's substantive due process rights. The panel clarified that going forward, an officer is liable under the state-created danger doctrine when the officer discloses a victim's confidential report to a violent perpetrator in a manner that increases the risk of retaliation against the victim.

Concurring in the judgment, Judge Bumatay agreed with the majority's conclusion that Officer High was properly afforded an opportunity to file a successive summary judgment motion and that she was entitled to qualified immunity based on the lack of any clearly established law. Because no clearly established law existed at the time of the incident, it was unnecessary to reach whether Martinez's allegations against Officer High amount to a claim under the state-created danger doctrine.

---

**COUNSEL**

Kevin G. Little (argued), Law Office of Kevin G. Little, Fresno, California, for Plaintiff-Appellant.

Suzanne M. Nicholson (argued), Suzanne M. Nicholson Attorney at Law, Sacramento, California; Bruce D. Praet, Ferguson Praet & Sherman, Santa Ana, California; for Defendant-Appellee.

## OPINION

DESAI, Circuit Judge:

Plaintiff Desiree Martinez appeals the district court's summary judgment order granting qualified immunity to Channon High, a City of Clovis police officer. Ms. Martinez survived brutal domestic violence at the hands of Kyle Pennington, another Clovis police officer with whom Ms. Martinez was in a relationship. She sued Officer High under 42 U.S.C. § 1983 for disclosing her confidential domestic violence report to her abuser, one of Officer High's colleagues. We hold that Officer High violated Ms. Martinez's due process rights under the state-created danger doctrine, but that right was not yet "clearly established" at the time of the violation. We thus affirm.

## BACKGROUND[1]

In February 2013, Ms. Martinez started a romantic relationship with Clovis police officer Kyle Pennington. The couple moved in together early in their relationship, and Mr. Pennington soon became violent. He first physically and sexually assaulted Ms. Martinez in April 2013, and a cycle of abuse escalated over the next several months.

Ms. Martinez called the police to report Mr. Pennington's abuse on May 2, 2013. Clovis police officers responded. One of the responding officers, Officer Kristina Hershberger, questioned Ms. Martinez at the scene. Ms. Martinez told Officer Hershberger about Mr. Pennington's prior abuse at a hotel in Dublin, California. Before leaving

---

[1] We construe any disputed facts in Ms. Martinez's favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

the scene, Officer Hershberger brought up the Dublin incident in front of Mr. Pennington, and Ms. Martinez recanted. Officer Hershberger also asked Mr. Pennington "what [he] was doing dating a girl like Desiree Martinez" and told him "she didn't think [Ms. Martinez] was necessarily a good fit for [him]." The officers left without arresting Mr. Pennington. He assaulted Ms. Martinez again that night.

On May 29, 2013, Ms. Martinez made an anonymous call to the Clovis Police Department to report that Mr. Pennington was still abusing her and to seek information about her legal rights. Ms. Martinez made this report confidentially due to Mr. Pennington's threats, which made her "fear[] great bodily harm or death." Shortly after, Mr. Pennington moved Ms. Martinez to Sanger, a nearby city, to "avoid further possible reports to the Clovis Police Department."

Just days after the move, neighbors called 911 after witnessing Mr. Pennington physically and sexually assault Ms. Martinez, leading Sanger police officers to respond to the incident at Mr. Pennington's home. Despite Ms. Martinez's obvious injuries, the responding officers did not arrest Mr. Pennington or issue a protective order until the next day. As the officers left, one remarked that Mr. Pennington's family were "good people." Mr. Pennington again abused Ms. Martinez that night.

In early September 2013, Officer High had two phone calls with Mr. Pennington. At the time, Officer High worked in the Clovis Police Department's records unit. Phone records show that Officer High called Mr. Pennington on his cell phone on September 3, and Mr. Pennington called Officer High on her cell phone on September 7. Ms.

Martinez overheard only one of those calls. It is unclear which call she overheard, but her testimony supports an inference that she overheard the September 7 call.[2]

Ms. Martinez likely did not hear the phone call between Officer High and Mr. Pennington on September 3. However, the September 3 call happened the morning Ms. Martinez "was supposed to testify as a witness in his criminal preliminary hearing." After the call, Ms. Martinez suffered "abuse and intimidation," which stopped her from testifying.

A few days later on September 7, Mr. Pennington called Officer High again. He spoke to Officer High on speakerphone in front of Ms. Martinez. During the call, Mr. Pennington asked Ms. Martinez if she was "telling the cops" about his abuse, and she responded "no." Officer High interjected: "Yes, she did. I see a report right here." Officer High also told Mr. Pennington that another Clovis police officer was under investigation for lying about a "romantic relationship" he had with Ms. Martinez.

Immediately after the call, Mr. Pennington inflicted "horrific, severe additional abuse" on Ms. Martinez, "including both physical and sexual abuse." Officer High's "contacts on September 3 and 7" provoked Mr. Pennington to continue abusing Ms. Martinez until he was arrested after a final, "especially brutal beating" on September 18.

## PROCEDURAL HISTORY

Ms. Martinez sued in 2015. The operative complaint asserted claims against Mr. Pennington, his parents, several police officers, and the cities of Clovis and Sanger. Ms.

---

[2] Whether Ms. Martinez overheard the call on September 3 or 7 does not affect our analysis.

Martinez's complaint included a § 1983 claim against Officer High and other officers for violating her substantive due process rights.[3] She alleged that Officer High put her in greater danger when Officer High disclosed Ms. Martinez's confidential report to Mr. Pennington. Ms. Martinez also alleged that the other officers put her in danger when they responded to 911 calls, including by failing to advise her about her rights, failing to separate her from Mr. Pennington, engaging in small talk with Mr. Pennington, and failing to arrest him.

All the officers moved for summary judgment on qualified immunity grounds. The district court granted qualified immunity to every officer except Officer High. As for Officer High, the court found that "it was clearly established that an officer sharing a domestic violence victim's confidential information to the alleged abuser would be a violation of the victim's substantive due process rights." Officer High did not appeal, but Ms. Martinez appealed the order granting qualified immunity to the other officers.

This court affirmed the district court's grant of qualified immunity to the other officers, holding that (1) the officers violated Ms. Martinez's substantive due process right, but (2) the right was not "clearly established" in 2013. *Martinez v. City of Clovis*, 943 F.3d 1260, 1276–77 (9th Cir. 2019) ("*Martinez I*"). Relevant here, the court analyzed the conduct of Officer Hershberger, one of the responding officers, which the district court had not focused on. This court held that Officer Hershberger violated Ms. Martinez's due

---

[3] Ms. Martinez also brought an equal protection claim against Officer High, which the district court dismissed in 2017. Ms. Martinez did not appeal that dismissal.

process rights by emboldening Mr. Pennington to "further abuse Martinez . . . with impunity" when Officer Hershberger "told Pennington about Martinez's testimony relating to his prior abuse" and said that "Martinez was not 'the right girl' for him." *Id.* at 1272. But the court nonetheless granted Officer Hershberger qualified immunity because the constitutional violation in "this context was not apparent to every reasonable officer at the time the conduct occurred." *Id.* at 1276.

On remand, the district court granted Officer High leave to file a successive summary judgment motion on her qualified immunity defense "[i]n light of the Ninth Circuit's ruling" in *Martinez I*. Officer High's new summary judgment motion argued that she too was entitled to summary judgment based on this court's analysis of Officer Hershberger's conduct in *Martinez I*. The district court granted the motion and held that, based on *Martinez I*, Officer High was "entitled to qualified immunity [because] it was not clearly established in 2013 that [Officer High]'s conduct violated due process." Ms. Martinez timely appealed.

## STANDARD OF REVIEW

We review a district court's decision to accept a successive motion for summary judgment for an abuse of discretion. *Hoffman v. Tonnemacher*, 593 F.3d 908, 911–12 (9th Cir. 2010). We review de novo the district court's grant of qualified immunity on summary judgment. *Martinez I*, 943 F.3d at 1269–70. "In doing so, we view the evidence in the light most favorable to" the nonmoving party. *Id.* at 1270.

## DISCUSSION

## I. The district court did not abuse its discretion by entertaining Officer High's successive summary judgment motion.

Ms. Martinez first argues that Officer High "waived her qualified immunity defense by failing to raise it in the prior appeal" and thus could not file a new summary judgment motion. We disagree.

First, the "prior appeal" was *Ms. Martinez's* appeal challenging the other officers' qualified immunity—Officer High did not appeal. *Martinez I*, 943 F.3d at 1269 n.13 ("The claims against High are not before us."). Officer High "could have taken an interlocutory appeal" from the district court's denial of her summary judgment motion. *Rivero v. City and County of San Francisco*, 316 F.3d 857, 863 (9th Cir. 2002). "But 'could have' is not 'should have.'" *Id.* This court has "made clear that the rule permitting a defendant to take an interlocutory appeal after a denial of a motion based on qualified immunity is not a rule *requiring* the defendant to take that appeal." *Id.* (emphasis added) (citing *DeNieva v. Reyes*, 996 F.2d 480, 484 (9th Cir. 1992)). Officer High's decision not to appeal the denial of her first summary judgment motion thus does not bar her from re-raising her qualified immunity defense in a subsequent summary judgment motion.

Nor was Officer High barred from filing a second summary judgment motion. Nothing in Rule 56 prohibits successive motions. Fed. R. Civ. P. 56(b) (allowing parties to "file a motion for summary judgment *at any time* until 30 days after the close of all discovery" unless the court or local rule says otherwise (emphasis added)). And "a district court may permit successive motions for summary judgment on

qualified immunity." *Hoffman*, 593 F.3d at 910; *see also Behrens v. Pelletier*, 516 U.S. 299, 306–11 (1996) (holding that a defendant could immediately appeal the denial of his successive motion asserting qualified immunity).

District courts may "weed out frivolous or simply repetitive motions." *Knox v. Sw. Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997). But Officer High's second motion was neither frivolous nor simply repetitive, and the district court was free to entertain it. *Hoffman*, 593 F.3d at 911. Officer High filed her second motion after she hired new counsel and after this court decided Ms. Martinez's prior appeal challenging other officers' qualified immunity. The second motion relied heavily on this court's opinion in *Martinez I*, a decision unavailable to Officer High when she filed her first motion.

All told, the district court did not abuse its discretion by considering Officer High's second summary judgment motion.

## II.  The qualified immunity framework.

Now we turn to the merits. An officer is entitled to qualified immunity unless the plaintiff shows that (1) the officer violated the plaintiff's constitutional right and (2) the "right was clearly established at the time of the incident." *Martinez I*, 943 F.3d at 1270. Because this court may consider either prong first, it need not decide the first prong if the second is dispositive. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). But deciding both prongs is "often beneficial" because it "promotes the development of constitutional precedent." *Id.* That is true here.

For one thing, the constitutional question is "in an area where this court's guidance is needed." *Martinez I*, 943 F.3d

at 1270 (alteration omitted) (quoting *Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019)). Indeed, our application of *Martinez I* in this case will guide future courts when addressing due process questions in similar contexts. What's more, the parties have repeatedly briefed the constitutional question in the district court and this court. Thus, we address both prongs to "best facilitate the fair and efficient disposition of [this] case." *Pearson*, 555 U.S. at 242.

## A. Officer High violated Ms. Martinez's due process rights.

Ms. Martinez's § 1983 claim stems from the Due Process Clause of the Fourteenth Amendment. Because the Due Process Clause is a "limitation on state action," state actors generally are not liable for failing "to prevent acts of private parties." *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023) (emphasis omitted), *cert. denied*, No. 23-270, 2024 WL 71941 (Jan. 8, 2024). But one exception to this rule applies "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger." *Id.* (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011)). Ms. Martinez invokes that exception here.[4]

To establish the "state-created danger" exception, a plaintiff must prove two things. The officer's "affirmative

---

[4] In her supplemental brief, Ms. Martinez raises for the first time several other constitutional arguments. Dkt. 48 at 4–6. We decline to consider those arguments because Ms. Martinez failed to make them below. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("As a general rule, we will not consider arguments that are raised for the first time on appeal."). We thus deny as moot Officer High's motion for leave to file objections to Ms. Martinez's supplemental brief, Dkt. 51.

conduct" must expose the plaintiff to a foreseeable danger that she would not otherwise have faced. *Id.* at 1111; *see also Martinez I*, 943 F.3d at 1271. And the officer must act "with 'deliberate indifference' to a 'known or obvious danger.'" *Murguia*, 61 F.4th at 1111 (quoting *Patel*, 648 F.3d at 974); *Martinez I*, 943 F.3d at 1271. Both requirements are met here.

### 1.  Officer High's affirmative conduct placed Ms. Martinez in actual, foreseeable danger.

First, Officer High's affirmative conduct increased Ms. Martinez's risk of abuse by Mr. Pennington. An officer's statements about a victim to a violent perpetrator can increase the risk of retaliation. In *Martinez I*, for example, this court held that Officer Hershberger's disclosure of Ms. Martinez's reported abuse "provoked" Mr. Pennington, and her "disparaging comments" about Ms. Martinez emboldened Mr. Pennington "to believe that he could further abuse Martinez, including by retaliating against her for her testimony, with impunity." *Martinez I*, 943 F.3d at 1272. Likewise in *Okin v. Village of Cornwall-On-Hudson Police Department*, the Second Circuit held that officers who "openly expressed camaraderie with [an abuser] and contempt for [the victim]" increased the danger to the victim "because they conveyed to [the abuser] that he could continue to engage in domestic violence with impunity." 577 F.3d 415, 430–31 (2d Cir. 2009). And in *Kennedy v. City of Ridgefield*, this court held that officers "affirmatively created a danger to" the plaintiff that "she otherwise would not have faced" when they notified an alleged perpetrator about the plaintiff's allegations against him "before the [plaintiff and her family] had the opportunity to protect themselves from his violent response to the news." 439 F.3d 1055, 1063 (9th Cir. 2006).

So too here. Officer High told Mr. Pennington about Ms. Martinez's confidential domestic violence report. She did so after hearing Ms. Martinez answer "no" when Mr. Pennington—the alleged abuser—asked her whether she was "telling the cops" about his abuse. Officer High also shared other information endangering Ms. Martinez, including that Ms. Martinez had a romantic relationship with another police officer. In other words, Officer High's disclosure was coupled with comments that Ms. Martinez was lying and also had a relationship with Mr. Pennington's colleague. A reasonable jury could find that Officer High's comments put Ms. Martinez at risk of violent retaliation.

The risk was also foreseeable. Officer High obviously knew that Mr. Pennington was an alleged abuser because the information she disclosed to him was a domestic violence report against him. And when Officer High spoke with Mr. Pennington, he had been arrested for domestic violence and was subject to a restraining order. Officer High also admitted in her deposition that she knew the Clovis Police Department put Mr. Pennington on leave because of "something involving a female." Worse, Officer High knew Ms. Martinez was in the room with Mr. Pennington when Officer High disclosed the report. The danger was obvious. Shortly after learning from Officer High that Ms. Martinez reported his abuse to the police, Mr. Pennington brutally sexually and physically assaulted Ms. Martinez. The assaults Ms. Martinez suffered after Officer High's disclosure "were objectively foreseeable" as "a matter of common sense." *Martinez I*, 943 F.3d at 1274.[5]

---

[5] In fact, Officer High's counsel conceded at oral argument that the harm was foreseeable.

Construing the facts in Ms. Martinez's favor, Officer High placed her "in greater danger" by disclosing her confidential complaint to Mr. Pennington while conveying contempt for Ms. Martinez. *Martinez I*, 943 F.3d at 1272; *see also Okin*, 577 F.3d at 429–30 (holding that reasonable jurors could find that police officers' conduct "implicitly but affirmatively encouraged [the perpetrator's] domestic violence").

### 2. Officer High was deliberately indifferent to a known or obvious risk.

Second, Officer High "acted with deliberate indifference toward the risk of future abuse." *Martinez I*, 943 F.3d at 1274. In non-detainee cases like this one, the deliberate indifference standard is subjective: The officer must "know that something is going to happen but ignore the risk and expose the plaintiff to it." *Murguia*, 61 F.4th at 1111 (cleaned up); *see Martinez I*, 943 F.3d at 1274. That does not mean the officer must "know with certainty that the risk will materialize or intend for the plaintiff to face the risk." *Murguia*, 61 F.4th at 1117 n.16. The officer need only "take an intentional action with knowledge that his actions will expose the plaintiff to an unreasonable risk." *Id.*

This court has held that knowledge about an abuser's history of violence constitutes deliberate indifference. For example, in *Kennedy*, the officers knew that an alleged perpetrator "had a predilection for violence and was capable of the attack he in fact perpetrated" on the plaintiff's family. 439 F.3d at 1064. The officers thus "knew that telling [the perpetrator] about the allegations against him without forewarning the [plaintiff's family] would place them in a danger they otherwise would not have faced." *Id.* So too in *Martinez I*, this court held that—given Mr. Pennington's

"violent tendencies"—"a reasonable jury could find that disclosing a report of abuse while engaging in disparaging small talk with Pennington . . . constitutes deliberate indifference." *Martinez I*, 943 F.3d at 1274. And most recently in *Murguia*, this court held that a state official "was aware of the obvious risk of harm [a mother] presented" to her children because the official knew about the mother's "history of abuse." 61 F.4th at 1116.

Like the officials in *Kennedy*, *Martinez I*, and *Murguia*, Officer High knew Mr. Pennington was violent. She knew Mr. Pennington was under investigation for domestic violence. She worked in the Clovis Police Department's records unit and saw Ms. Martinez's report of Mr. Pennington's abuse. Not only was the department already investigating Mr. Pennington for domestic violence against an ex-girlfriend, *Martinez I*, 943 F.3d at 1274, but there was an active criminal case against him for assaulting *Ms. Martinez*. Officer High had also completed domestic violence training and understood that a victim's confidential reports should not be disclosed to the abuser. Yet she took Mr. Pennington's call and told him about Ms. Martinez's confidential report for no apparent reason other than to discredit Ms. Martinez. And she knew Ms. Martinez was in the room with Mr. Pennington and would thus be exposed to his violent reaction. These facts no doubt show "deliberate indifference to a known or obvious danger." *Martinez I*, 943 F.3d at 1274.

\*       \*       \*

In sum, taking the facts in Ms. Martinez's favor, Officer High violated Ms. Martinez's due process rights by knowingly placing her in greater danger of Mr. Pennington's assaults.

**B. Ms. Martinez's constitutional right was not "clearly established" when Officer High engaged in the challenged conduct.**

Though Ms. Martinez established a constitutional violation, Officer High is entitled to qualified immunity because existing case law in 2013 did not make clear that Officer High's conduct violated Ms. Martinez's substantive due process rights. "There need not be a case directly on point" to defeat an officer's qualified immunity defense, but existing case law must have put "every reasonable official" on notice that their conduct was unconstitutional. *Martinez I*, 943 F.3d at 1275. The case law also "must be 'controlling'—from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Id.* (quoting *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017)). No such controlling authority existed in 2013.

The district court relied on *Okin* when it first denied Officer High qualified immunity. And Ms. Martinez relied on *Okin* again on remand. In that case, the Second Circuit held that police officers violated a domestic violence victim's due process rights when they emboldened the abuser "by fostering the belief that his intentionally violent behavior will not be confronted by arrest, punishment, or police interference." *Okin*, 577 F.3d at 437. But we held in *Martinez I* that *Okin* did not clearly establish Ms. Martinez's due process rights because it had not "been 'embraced by a "consensus" of courts.'" 943 F.3d at 1276 (quoting *Sharp*, 871 F.3d at 911). *Martinez I* established only "[g]oing forward"—but not in 2013—that an officer violates a victim's due process rights when the officer engages in affirmative conduct much like Officer High's. *Id.* at 1276–77. Like Officer High, Officer Hershberger told Mr.

Pennington about Ms. Martinez's confidential report of his prior abuse while also disparaging Ms. Martinez. *Id.* at 1272. We held that this conduct violated Ms. Martinez's due process rights by provoking and emboldening Mr. Pennington to retaliate against her later that day, but we granted Officer Hershberger qualified immunity because the constitutional violation in "this context was not apparent to every reasonable officer at the time the conduct occurred." *Id.* at 1276. That holding applies equally to Officer High.

*Kennedy* does not require a different result. There, the plaintiff told police that her teenage neighbor molested her nine-year-old daughter. *Kennedy*, 439 F.3d at 1057. The plaintiff also reported that the neighbor was violent and unstable, so the police assured her they would notify her before "any police contact with the [neighbor's] family about her allegations." *Id.* at 1057–58. The officers later told the neighbor about the plaintiff's allegations without first warning the plaintiff. *Id.* at 1058. When police told the plaintiff they had just spoken to the neighbor about the allegations, she "became upset" and asked why they didn't warn her. *Id.* The police assured her they "would patrol the area around both her house and the [neighbor's] house that night to keep an eye on [the neighbor]." *Id.* Because it was late and based on the officers' assurances, the plaintiff locked her doors and planned to leave town the next day. *Id.* But early the next morning, the neighbor broke in and shot the plaintiff and shot and killed her husband. *Id.*

This court held that the officers were not entitled to qualified immunity because "it was clearly established that state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced." *Id.* at 1066. That broad statement applies equally to this case. But since

*Kennedy*, this court and the Supreme Court have explained that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). It is instead "the facts of particular cases that clearly establish what the law is." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 951 (9th Cir. 2017).

Although *Kennedy* involved a police officer disclosing a report to an alleged perpetrator, it did not involve sufficiently "similar circumstances" to put the constitutional violation "beyond debate" here. *White*, 580 U.S. at 79 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The officers in *Kennedy* not only told a violent perpetrator about the plaintiff's allegations without giving her "a reasonable opportunity to protect her family" despite promising to do so, but they also misrepresented the level of danger by assuring her they would patrol the neighborhood. 439 F.3d at 1063. This "was an additional and aggravating factor" that made the plaintiff and her family "more vulnerable to the danger." *Id.* Given the officers' specific false assurances that affected the plaintiff's choices, we cannot say that "every reasonable official would have understood" from *Kennedy* that an officer violates the constitution by disclosing a report to a violent perpetrator. *See Martinez I*, 943 F.3d at 1275. Indeed, this court relied on *Kennedy* in *Martinez I*, yet it did not hold that *Kennedy* clearly established Ms. Martinez's due process rights. *See id.* at 1271–74.

At bottom, our precedent dictates that no existing authority gave Officer High sufficient notice in 2013 that her conduct violated due process.

**CONCLUSION**

We affirm the district court's summary judgment granting Officer High qualified immunity because Ms. Martinez's constitutional right was not clearly established in 2013. But we now clarify that right going forward. An officer is liable under the state-created danger doctrine when the officer discloses a victim's confidential report to a violent perpetrator in a manner that increases the risk of retaliation against the victim.

Officer High's motion for leave to file objections to Ms. Martinez's supplemental brief, Dkt. 51, is **DENIED** as moot.

**AFFIRMED**.

---

Bumatay, J., concurring in the judgment:

It cannot be seriously disputed that the judicially crafted "state-created danger exception finds no support in the text of the Constitution, the historical understanding of the 'due process of law,' or even Supreme Court precedent." *Murguia v. Langdon*, 73 F.4th 1103, 1104 (9th Cir. 2023) (Bumatay, J., dissenting from the denial of rehearing en banc). From the earliest time, it was understood that the due process right was "intended to secure the individual from the arbitrary exercise of the *powers of government*." *Hurtado v. California*, 110 U.S. 516, 527 (1884) (emphasis added). But not good enough for us, we've expanded due process to protect individuals from danger by private parties, so long as a government actor does something, somewhere in the chain of events.

As I've said previously, it's a Frankenstein's monster-like doctrine, "cobbl[ing] together bits and pieces of

standards from other contexts to try to breathe new life into substantive due process." *Murguia*, 73 F.4th at 1114. And unfortunately, it's a monster that "roams menacingly among our circuit courts," especially the Ninth Circuit. *Id*. at 1115. But because expanding substantive due process feels more like "freewheeling judicial policymaking" than exercising judgment, we should be reluctant to preside over its growth. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 240 (2022).

While I agree with the majority's conclusion that Officer Channon High was properly afforded an opportunity to file a successive summary judgment motion and that she was entitled to qualified immunity based on the lack of any clearly established law in this context, it was simply unnecessary to reach whether Desiree Martinez's allegations against Officer High amount to a claim under the state-created danger doctrine. To decide this case, it is sufficient that *everyone* agrees that no clearly established law existed at the time of the incident between Martinez, Officer High, and her abuser. As the majority admits, we need not decide the first prong of qualified immunity if the second prong is dispositive. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

And here, the district court did not rule on the first prong of whether there's a constitutional violation. No party argued that there was a constitutional violation in their initial briefing. It wasn't until prodded at oral argument by our court and forced to file supplemental briefing did the parties raise any arguments about a constitutional violation. It was unwise to reach the constitutional violation question under these circumstances.

For these reasons, I concur only in the judgment of the court.