FILED

**NOT FOR PUBLICATION**

JUN 4 2025

**UNITED STATES COURT OF APPEALS**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| MICHAEL TACKETT; KAREN TACKETT, A Married Couple; Estate of ASHLEY MIDBY | No. 24-4924 |
| Plaintiffs-Appellants, | D.C. No. 1:22-cv-00110-JZ |
| v. | MEMORANDUM[*] |
| CITY OF HAILEY, a municipal corporation; STEVE ENGLAND, An Individual, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the District of Idaho
Jack Zouhary, District Judge, Presiding

Argued and Submitted April 11, 2025
San Francisco, CA

Before: S.R. THOMAS, PAEZ, and MILLER, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge MILLER.

The City of Hailey ("the City") and its Police Chief, Steve England

("England") appeal the district court's denial of their motion for summary

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

judgment. Specifically, they appeal the denial of qualified immunity to England and the denial of summary judgment on the plaintiffs' claims against the City ("the *Monell* claims"). We have jurisdiction to review the denial of qualified immunity under 28 U.S.C. § 1291, but we lack jurisdiction over the *Monell* claims. *See Huskey v. City of San Jose*, 204 F.3d 893, 895 (9th Cir. 2000). Because the parties are familiar with the factual and procedural history of the case, we need not recount it here. We affirm the district court's denial of on qualified immunity, and dismiss the appeal as to the *Monell* claims.

I

The district court correctly denied qualified immunity to England. An officer is entitled to qualified immunity unless the plaintiff shows that (1) the officer violated the plaintiff's constitutional right and (2) the "right was clearly established at the time of the incident." *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

"[R]esolving all factual disputes and drawing all inferences in [the plaintiffs'] favor," *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022), we conclude that England violated Ashley Midby's ("Midby") Fourteenth Amendment right to be protected from state-created danger. To establish liability under the "state-created danger" doctrine, a plaintiff must prove two things. First, the

2

officer's affirmative conduct must have exposed the plaintiff to a foreseeable danger that she would not otherwise have faced. *Martinez*, 943 F.3d at 1271. Second, the officer must have acted "with 'deliberate indifference' to a 'known or obvious danger.'" *Id.* at 1274 (quoting *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018)).

Construing the facts in the light most favorable to the plaintiffs, the district court properly concluded that genuine issues of material fact precluded qualified immunity at this stage of the case. England acted affirmatively when he told Midby that he would provide her protection in the form of a "stay away" order, and he broke that promise when he proceeded to fire Murphy, voiding the "stay away" order, without notifying Midby. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062–63 (9th Cir. 2006). A rational juror could conclude that England placed Midby in a worse position than in which she otherwise would have been. *See id.*

A rational juror could also conclude that England "acted with deliberate indifference toward the risk of future abuse," *Martinez*, 943 F.3d at 1274. As the summary judgment record demonstrated and the district court noted: "[England] knew [Midby] was scared and feared retaliation; [Jared Murphy ("Murphy")] had possibly physically abused [Midby] in the past; and [Murphy] threatened to 'make her life hell' if he was disciplined by [the Hailey Police Department]." Despite this

3

knowledge, England "ignore[d] the risk [of Murphy's retaliation] and expose[d] [Midby] to it." *See Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023). These acts, construed in the light most favorable to the plaintiffs, contravened clearly established law. *See Hernandez*, 897 F.3d at 1137.

Under our precedent, it is clearly established that an officer can be held liable when an assurance of protection is given, and that protection is subsequently removed without notice. *Kennedy*, 439 F.3d at 1067; *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir.1992). As in *Kennedy*, England broke a promise on which the victim relied, thereby "affirmatively creat[ing] a danger . . . she otherwise would not have faced." 439 F.3d at 1063. Similarly, as in *Grubbs*, England "enhanced [Midby's] vulnerability to attack by misrepresenting to her the risks" present. 74 F.2d at 121. England's affirmative conduct left Midby "exposed to the danger of the subsequent physical assault and injury [she] in fact suffered." *Kennedy*, 439 F.3d at 1067. Here, as in *Kennedy* and *Grubbs*, "[Midby] relied upon the state actor's representation and did not take protective measures she otherwise would have taken, and the state's action made [her] vulnerable to a particularized danger [she] would not have faced but for that action." *Id*. Construing the facts in the light most favorable to the plaintiffs, the district court properly concluded that no reasonable officer in England's position could have "concluded otherwise than that

4

[Midby] had a right not to be placed in obvious physical danger as a result of" breaking his promise of protection. *Id.*

## II

We lack jurisdiction to review the district court's denial of summary judgment as to the plaintiffs' *Monell* claims against the City because they are not "inextricably intertwined" with the claim against England. "[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Huskey v. City of San Jose*, 204 F.3d 893, 905 (9th Cir. 2000). Here, the facts alleged against the City "are not limited to the facts alleged to have been a constitutional violation by England." *See id.* at 905-06. Rather, the plaintiffs' *Monell* claims are based, as the district court found, on the Hailey Police Department's background check and hiring practices. Therefore, we do not have jurisdiction to review those claims in this appeal.

## III

In sum, we affirm the district court's denial of qualified immunity and dismiss the appeal of the *Monell* claims for lack of jurisdiction.

**AFFIRMED IN PART; DISMISSED IN PART.**



*Tackett, et al. v. City of Hailey, et al.*, No. 24-4924

MILLER, Circuit Judge, concurring in part and dissenting in part:

When Steve England, the Police Chief of Hailey, Idaho, learned of allegations that one of his officers, Jared Murphy, had abused his romantic partner, Ashley Midby, he took swift action. England investigated the allegations, told Midby that he would direct Murphy not to contact her, and, after doing just that—and further corroborating the allegations—terminated Murphy's employment and made Murphy turn in his badge and service weapon. But soon thereafter, Murphy used a different firearm to kill Midby. Her parents, Michael and Karen Tackett, brought this action against England and the City of Hailey under 42 U.S.C. § 1983.

I agree with the court that we lack appellate jurisdiction over the claims against the City of Hailey, but I do not agree that England violated any clearly established Fourteenth Amendment right. I would reverse the district court's decision denying his motion for summary judgment on the basis of qualified immunity.

Generally, a State's failure to protect a person against private violence does not violate that person's Fourteenth Amendment guarantee of due process. *DeShaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 195 (1989). But we have recognized an exception to that rule "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious

1

danger." *Martinez v. High*, 91 F.4th 1022, 1028 (9th Cir. 2024) (quoting *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023)). To overcome England's defense of qualified immunity here, the Tacketts must show not only that England violated Midby's right to be free from a state-created danger but also that the right was clearly established at the time England acted. *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

England did not act with deliberate indifference to the danger posed by Murphy. To the contrary, he took immediate, vigorous action to mitigate the danger: He investigated Murphy's misconduct and then demanded Murphy's badge and gun. That action eliminated Murphy's ability to abuse his official position to harm Midby and imposed consequences for his misconduct, thereby deterring future misconduct. With the benefit of hindsight, one can imagine ways in which England might have done even more. But his actions cannot plausibly be characterized as reflecting deliberate indifference.

Even if England had violated the Fourteenth Amendment, he would still be entitled to qualified immunity because the relevant legal principles were not clearly established at the time. "'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). It is instead "the facts of particular cases that clearly establish what the law is." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d

2

938, 951 (9th Cir. 2017). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

None of our cases present sufficiently "similar circumstances" to have put it "beyond debate" that England's conduct violated Midby's constitutional rights. *White*, 580 U.S. at 79 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). In *Kennedy v. City of Ridgefield*, the police told the plaintiff that they would notify her before disclosing her confidential allegations of abuse to the abuser's family, but they then did the opposite. 439 F.3d 1055, 1065 (9th Cir. 2006). And although the police assured the plaintiff that they would patrol the neighborhood around her house, they broke that promise too. *Id.* In *L.W. v. Grubbs*, the defendants led the plaintiff, a registered nurse working at a custodial institution, to believe that she would not be required to work alone with violent sex offenders. 974 F.2d 119, 120 (9th Cir. 1992). But they then placed her alone with a violent sex offender who had "failed all treatment programs at the institution" and whose files showed he was "very likely to commit a violent crime if placed alone with a female." *Id.*

Unlike the defendants in *Kennedy* and *Grubbs*, England did exactly what he said he was going to do. England told Midby that he would "let [Murphy] know, if you're good with it, . . . that he is not to contact you or any of your immediate family . . . or your places of business or your residence, . . . in any way, shape or

3

form." That is just what he did: He told Murphy, that day, not to contact Midby by "E-mail, text message, phone, in person." England never promised not to fire Murphy, nor did he say he would do anything beyond telling Murphy, a single time, to refrain from contacting Midby.

The Tacketts read England's words to have promised protection through a "stay away order" that England implicitly voided when he fired Murphy, because the "order" was no longer backed by an implied threat of some kind of employment sanction. Even if that were true, none of our cases put England on notice that his particular conduct—telling Midby that he would direct Murphy not to contact her, doing so, and then firing Murphy for bad behavior—was "clearly unlawful." *Saucier*, 533 U.S. at 202.

Until today, we have never applied the state-created-danger doctrine to the decision to terminate a state employee for misconduct. Extending the doctrine to that context is an affront to principles of federalism because it interferes with a State's ability to address the unacceptable behavior of its employees. *Cf. Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991). It also creates a perverse incentive for law enforcement to ignore allegations like Midby's, lest acting affirmatively create liability for allegedly heightening the danger if something tragic results.

In this case, we now know that something tragic did result, and one can understand and even sympathize with the impulse to make someone pay for what

4

happened. Murphy is now dead, so England may seem like the next best choice. But because England did not violate any clearly established rule of constitutional law, that impulse cannot justify subjecting him to liability under section 1983.